UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

-------------------------------------------------------------X
:
PEACHTREE CROSSING, LLC,                  :
                                          :
            Plaintiff,                    :
                                          :   Case No.
vs.                                       :
                                          :
                                          :
PEACHTREE STATION HOLDING LLC             :
                                          :
            Defendant.                    :
                                          :
-------------------------------------------------------------X

## COMPLAINT

The Plaintiff Peachtree Crossing, LLC ("Peachtree Crossing"), for its Complaint against the Defendant Peachtree Station Holding LLC ("PSH"), alleges as follows:

## PARTIES

1. Peachtree Crossing is a limited liability company organized under the laws of Delaware.

2. Peachtree Crossing has its principal place of business in Fairburn, Fulton County, Georgia.

3. Peachtree Crossing has constituent members who are residents of Georgia and Virginia.

4. Defendant PSH is a limited liability company organized under the laws of Delaware. It is registered to do business in Georgia, and it maintains its principal office at 8115 Preston Road, Suite 400, Dallas, TX 75225.

1

5. On information and belief and after a study of publicly available information, Peachtree Crossing avers that Defendant PSH appears to be headquartered in Texas and not have any constituent members who are residents of Georgia or Virginia.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction based on 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

7. PSH is subject to the personal jurisdiction of this Court because it is registered to do business in the state of Georgia and because it has transacted business in the state of Georgia.

8. PSH may be served with summons and process by serving its registered agent Corporation Service Company at 40 Technology Pkwy South #300, Norcross, GA 30092.

9. Venue is proper within this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

10. Peachtree Crossing was the developer of a retail shopping center in Chamblee, Georgia known as Peachtree Station Shopping Center (the "Shopping Center").

11. The Shopping Center property is owned by the Downtown Development Authority of the City of Chamblee ("DDA") and was leased to Peachtree Crossing.

12. Due to certain anticipated extreme development and site preparation costs which rendered development of the Shopping Center financially unfeasible, the DDA granted certain tax abatement benefits to Peachtree Crossing as incentive and consideration for its agreement to develop the Shopping Center.

13. The development of the Shopping Center was completed in 2017. Numerous tenants had signed leases to retail space within the Shopping Center by that time which, among other things, obligated the tenants to pay rent, including defined tax payments, to the Shopping Center landlord.

14. The tax obligations of the Shopping Center tenants were defined in the leases to include property tax amounts which were abated to the landlord.

15. Thus, even if no property taxes were actually paid on the Shopping Center property, the tenants of space at the Shopping Center were responsible for payments to the landlord as if the property tax were levied, based on the assessed value of the property.

16. The leases all had provisions with the following or substantially similar language:

> Tenant acknowledges that Landlord may obtain [four of the leases, executed later, use "has obtained."] certain development revenue bond financing and tax credits and/or offsets as a result of Landlord's development of the Shopping Center through the Downtown Development Authority of the City of Chamblee, as a result of which the ad valorem taxes payable with respect to the Shopping Center will be reduced (the "**Tax Abatement**"). Landlord shall be the sole beneficiary of the Tax Abatement. For the period commencing on the Commencement Date and ending on the date that the Tax Abatement is no longer in effect (the "**Tax Abatement Period**"), the amount payable by Tenant as Taxes shall be deemed to be an amount equal to the product of Tenant's Proportionate Share multiplied by the amount of the Taxes that would have been assessed against the Shopping Center but for the Tax Abatement; provided, however, in no event shall Tenant be required to pay Taxes in an amount in excess of its Proportionate Share of the Taxes that would otherwise be levied against the Shopping Center were the Tax Abatement not in effect. (bold face in original).

17. Pursuant to a certain Purchase and Sale Agreement ("PSA") dated November 7, 2017, Peachtree Crossing sold its right, title, and interest in the Shopping Center (except as reserved therein) to PSH.

18. Peachtree Crossing and PSH are also parties to that certain Tax Abatement Escrow Agreement ("TAEA") dated December 22, 2017 (a true and correct copy of the TAEA is attached hereto as Exhibit 1).

19. Section 4.2 of the TAEA provides:

> <u>Deposit of Net Tax Receipts by Purchaser</u>.  Through and until the Expiration Date, Purchaser will deposit the Tax Reimbursements actually received by Purchaser less any amounts required or anticipated in good faith by Purchaser to be required to be paid by Purchaser to any applicable taxing authority with respect to the Property (the "**Net Escrowed Tax Receipts**") with Escrow Agent within ten (10) Business Days following receipt of same, and will deliver notice thereof to Seller.  During the Term, Purchaser shall use commercially reasonable efforts consistent with that of managers of comparable properties in the Atlanta, Georgia metropolitan area ("**Comparable Managers**") to (x) operate and maintain the Property in no less than the manner required by the Bond Documents (as defined in the Purchase Agreement) and (y) collect Tax Reimbursements from Tenants; provided, however, in no event shall the foregoing require Purchaser to bring suit against any Tenant or to terminate any Lease prior to such times that Comparable Managers would customarily take such measures.

20. Section 2(f) of the TAEA states in pertinent part:

> " **'Tax Reimbursements'** means (i) the aggregate amounts actually paid by each Tenant that are payable by each Tenant pursuant to its Lease in respect of ad valorem real estate taxes or equivalent taxes and assessments imposed, levied and/or assessed against the Shopping Center ...".

21. The TAEA further provides that upon the satisfaction of certain conditions, the Tax Reimbursements would be disbursed to Peachtree Crossing.

22. But for PSH's breaches described herein, said conditions would have been satisfied such that Tax Reimbursements would have been paid to Peachtree Crossing.

23. Since the execution of the TAEA, PSH has been responsible to collect the Tax Reimbursements from the Shopping Center tenants for the benefit of Peachtree Crossing.

24. After the closing of the sale of Peachtree Crossing's interests in the Shopping Center to PSH, the Shopping Center property was assessed by the taxing authorities at a substantially higher value than was in effect prior to the closing.

25. On information and belief, certain tenants of the Shopping Center complained to PSH about the increased amounts they were required to pay because of the increased tax assessment.

26. On further information and belief, PSH took no action to insist that the tenants timely pay total amounts equal to their rents and tax obligation, and in fact may have led the tenants to believe that they did not have to make such full payments.

27. Peachtree Crossing complained to PSH on numerous occasions of its failures to enforce the lease terms to protect Peachtree Crossing's rights, to little or no avail.

28. On or about January 13, 2020, certain tenants filed a complaint in the Superior Court of Gwinnett County, Civil Action No. 20-A-00261-7, (the "Tenant Lawsuit") against PSH seeking declarations that the tenants did not have to pay the tax abatement obligations as set forth in their respective leases.

29. Plaintiffs in the Tenant Lawsuit moved for default judgment against PSH alleging that PSH had not properly answered the complaint / amended complaint therein.

30. On December 30, 2020, the court in the Tenant Lawsuit entered an Order granting plaintiffs' motion for default judgment on liability. (A true and correct copy of the Order is attached hereto as Exhibit 2).

31. PSH has failed to collect and/or account for the requisite Tax Reimbursements from the Shopping Center tenants as required by the TAEA.

32. PSH has failed to pay for the account of Peachtree Crossing the amounts of Tax Reimbursements that each tenant was obligated to pay pursuant to the terms of their respective Leases.

33. PSH has failed to use commercially reasonable efforts consistent with that of Comparable Managers to collect the Tax Reimbursement amounts from the Shopping Center tenants.

34. PSH's failure to properly defend the Tenant Lawsuit is a breach of the TAEA and the PSA.

35. Said failures of PSH to collect the Tax Reimbursement Amounts from the Shopping Center tenants constitute breaches of the TAEA.

36. Peachtree Crossing has been damaged by PSH's aforesaid breaches, including, but not limited to, in excess of $460,000.00 in past due tax abatement payments through December 2020.

37. In addition, Peachtree Crossing is continuing to be damaged by PSH's aforesaid breaches, including, but not limited to, the loss of tax abatement payments from December 2020 forward.

38. PSH is also liable for Peachtree Crossing's losses pursuant to the indemnification obligations set forth in section 11.2 of the PSA.

## COUNT ONE – BREACH OF CONTRACTS

39. Peachtree Crossing realleges paragraphs 1 – 38 of this Complaint as if fully set forth herein.

40. PSH's breaches of the TAEA and the PSA have caused and are continuing to cause Peachtree Crossing to incur losses and suffer damages in an amount that will be proven at trial.

### COUNT TWO – BREACH OF IMPLIED CONTRACT

41. Peachtree Crossing realleges paragraphs 1 – 38 of this Complaint as if fully set forth herein.

42. PSH has breached its implied contracts and covenants with Peachtree Crossing by failing to prorate the total collections from Shopping Center tenants in such a manner that Peachtree Crossing received proceeds in a pro rata proportion to its interest in the total tenant obligations under the Leases.

WHEREFORE, Peachtree Crossing, LLC demands judgment against Peachtree Station Holdings LLC:

A. For all damages which it has incurred as a result of Peachtree Station's breaches of the TAEA and the PSA;

B. For all damages which it has incurred as a result of Peachtree Station's breaches of its implied obligations and covenants with Peachtree Crossing;

C. For an Order requiring PSH to comply with its obligations to Peachtree Crossing pursuant to the terms of the TAEA and the PSA;

D. For recovery of its attorneys' fees and costs of collection; and

E. Such other and further relief as this Court deems just.

Respectfully submitted,

<u>/s/ Kirk M. McAlpin, Jr.</u>
Kirk M. McAlpin, Jr.
Georgia Bar No. 480525
Derek S. Littlefield
Georgia Bar No. 141569
CUSHING, MORRIS, ARMBRUSTER &
MONTGOMERY, LLP
191 Peachtree St., N.E., Suite 4500
Atlanta, GA  30303
Telephone: (404) 521-2323
Facsimile: (404) 522-0607
Email:  kmm@cmamlaw.com

Attorneys for Plaintiff
Peachtree Crossing, LLC

January __, 2021